# IN THE UNITED STATES DISTRICT COURT IN AND FOR THE NORTHERN DISTRICT OF FLORIDA, GAINESVILLE DIVISION

MOON J. LEE,
Plaintiff,

CIVIL ACTION
Case # 1:25cv56-MW-MAF

v.

THE UNIVERSITY OF FLORIDA BOARD OF TRUSTEES,
Defendant,


## AMENDED COMPLAINT FOR ACTUAL DAMAGES, PUNITIVE DAMAGES, ATTORNEY'S FEES, COURT COSTS AND A JURY TRIAL

Plaintiff, **Dr. Moon J. Lee**, by and through herself, files this Complaint against **The University of Florida Board of Trustees** (hereinafter referred to as "Defendant"), and alleges as follows:

## JURISDICTION AND VENUE

1. This is a civil action seeking relief for unlawful employment practices under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Florida Civil Rights Act as codified in Florida Statutes, Chapter 768 Florida Statutes(Negligence), Federal, and State of Florida common laws, and any other appropriate State of Florida, or Federal Law for retaliation following the Plaintiff's having made charges, testifying, assisting, and participating in enforcement proceedings such as filing of an Equal Employment Opportunity Commission (EEOC) complaint.

2. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 and 1343, as this action arises under the laws of the United States.

3. Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964, and all jurisdictional requirements for coverage have been met.

4. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events or omissions giving rise to this claim occurred within the Northern District of Florida and Defendant is headquartered in this jurisdiction. At all times relevant Defendant had in excess of 1,500 total employees in the state of Florida.

## CONDITIONS PRECEDENT

5. Plaintiff asserts that all conditions precedent to filing this lawsuit have been met.

6. On December 6, 2023, Plaintiff filed charges concerning Defendant's unlawful employment practice with the Equal Employment Opportunity Commission (EEOC Case # 15D-2024-00376).

7. On November 20, 2024, Plaintiff received the EEOC Notice of Right to Sue (EEOC Case # 15D-2024-00376).

8. Plaintiff has filed this Complaint within the **90-day statutory period**, or in the alternative, asserts that **equitable tolling** applies due to extraordinary circumstances beyond her control, including documented **severe winter storms** that disrupted **U.S. Postal Service (USPS) operations (Exhibit 1)**. Courts have recognized that filing delays caused by external factors warrant equitable tolling. See **Baldwin County Welcome Ctr. v. Brown**, 466 U.S. 147, 151 (1984); **Grist v. Upjohn Co.**, 955 F.2d 1089, 1090 (6th Cir. 1992).

## PARTIES

9. **Plaintiff:** Dr. Moon J. Lee is a former tenured associate professor at the University of Florida, who resides in 7338 Dartmoor Crossing, Fayetteville, NY, 13066.

10.    Defendant, **The University of Florida Board of Trustees**, is a governing body of a public land-grant research university headquartered at **123 Tigert Hall, Gainesville, FL 32611**.

## STATEMENT OF FACTS

11.    Plaintiff was employed as a tenured associate professor at the University of Florida from August 2009 to July 2021.

12.    Plaintiff consistently received outstanding performance evaluations yet was repeatedly denied promotion while similarly situated professors were promoted.

13.    In January 27, 2022, Plaintiff filed an EEOC complaint (Charge No. 15D-2022-00355) alleging discrimination and retaliation.

14.    Defendant engaged in an **ongoing and continuous pattern of retaliation**, acting with **premeditated malice** and **reckless indifference** toward Plaintiff's federally protected rights under **Title VII and the Florida Civil Rights Act**.

15.    In direct retaliation for Plaintiff's protected activities—including filing EEOC discrimination complaints, testifying, assisting, and participating in enforcement proceedings—Defendant subjected her to applying disparate and arbitrary standards to her promotion while similarly situated colleagues were not held to the same requirements. Defendant's actions violate Title VII of the Civil Rights Act, codified at 42 U.S.C. §§ 2000e-2000e-17.

16.    In September 2022, Plaintiff received the EEOC Notice of Right to Sue (EEOC Case # 15D-2022-00355)

17.    Defendant has engaged in a continuous campaign of retaliation against Plaintiff, including but not limited to the following:

18.    On **December 16, 2022**, Defendant, through its official report to the entire Academic Personnel Board, escalated its ongoing retaliatory efforts against Plaintiff by deliberately distorting and misrepresenting

her professional record. This intentional mischaracterization was designed to harm Plaintiff's professional reputation, undermine her future employment opportunities, and negatively impact her lifetime earning potential—actions undertaken solely because of her engagement in statutorily protected Title VII activity.

19. On **December 16, 2022**, Dean Brown willfully and maliciously retaliated against Plaintiff by using his official report to sabotage her promotion to full professor. His methods of retaliation included:

- **(a)** Misrepresenting Plaintiff's qualifications and achievements to create a false perception of inadequacy.

- **(b)** Applying and selectively enforcing arbitrary promotion standards that were not part of the College's official Tenure and Promotion Standards and Criteria.

- **(c)** Blaming Plaintiff for circumstances created by Defendant's previous acts of retaliation.

- **(d)** Deliberately distorting Plaintiff's academic record by applying ad hoc and capricious standards not found in the official promotion criteria to further damage her professional standing, career prospects, and future earnings.

20. In his official report to the Academic Personnel Board, Dean Brown falsely asserted that Plaintiff's teaching evaluation scores were problematic. However, he intentionally omitted other scores including colleagues' evaluations, department faculty assessments and chair's evaluations.

21. Defendant deliberately misrepresented Plaintiff's teaching record to damage her professional reputation, specifically by stating that her teaching evaluations were below average without disclosing that:

- **(a)** As an act of prior retaliation, Plaintiff's teaching assignments were deliberately altered, disproportionately assigning Plaintiff to teach

difficult, research-intensive undergraduate courses, including the widely dreaded yet required research methods course.

- **(b)** The research methods course is widely disliked by undergraduate students, who perceive it as an unnecessarily difficult "weed-out" class, leading to systematically lower evaluation scores.

- **(c)** It is well-documented that student teaching evaluations for such difficult courses are consistently lower than for other courses, a fact well known to Defendant.

- **(d)** Research confirms that student teaching evaluations are inherently biased against faculty of color, particularly Black, Hispanic, and Asian professors. The University was repeatedly informed that these evaluations are unreliable indicators of teaching effectiveness and have a discriminatory impact on minority faculty, yet Defendant knowingly weaponized this flawed metric against Plaintiff to further its retaliatory agenda.

- **(e)** Minority professors, as a general rule, receive lower teaching evaluation scores due to systemic bias. Defendant was repeatedly made aware of this fact in various institutional settings but failed to take corrective measures, instead choosing to exploit this discriminatory system to justify its retaliatory actions against Plaintiff.

22. In his report to the Academic Personnel Board, Dean Brown falsely claimed that Plaintiff's graduate mentoring had declined since 2014 but deliberately omitted that this was a direct consequence of Defendant's prior retaliatory actions:

- **(a)** Beginning in Spring 2015, the number of Ph.D. students assigned to work with Plaintiff was drastically reduced.

- **(b)** Plaintiff's teaching assignments were strategically shifted toward undergraduate courses, significantly restricting her ability to mentor graduate students.

- **(c)** Despite these retaliatory limitations, Plaintiff maintained an outstanding record of graduate advising, mentoring nearly 50

graduate students—many of whom have gone on to successful careers.

23. Dean Brown also intentionally misrepresented Plaintiff's research focus in his official report to the Academic Personnel Board, falsely alleging that her grant output was below the norms in her field—an assertion that mischaracterized her scholarship and funding track record.

24. Dean Brown further manipulated citation analysis data to undermine Plaintiff's credentials, stating that her Google index score was low while failing to acknowledge that:

- **(a)** The same index score was previously cited in a 2018 endorsement letter from the then-department chair, whose expertise in the field affirmed that Plaintiff's research was highly valuable and impactful.

- **(b)** The 2018 letter noted that Plaintiff's research contributions were expected to remain influential for years to come. An external reviewer in that letter explicitly expressed hope that Plaintiff would continue her work in the crucial research area.

**25.** Dean Brown asserted that Plaintiff's record was "mixed" due to her grant productivity, while failing to disclose that:

- **(a)** Defendant imposed a substantial grant funding requirement on Plaintiff that was not applied consistently to similarly situated white professors. The differential application of this standard constitutes **prima facie evidence of discriminatory and retaliatory treatment.**

26. Plaintiff asserts that similarly situated individuals who did not engage in protected activity under Title VII were not subjected to the same degree of scrutiny, retaliation, and arbitrary promotion standards. These individuals were not:

- Publicly misrepresented in official promotion evaluations.

- Held to inconsistent and unestablished grant funding requirements.

27. By selectively subjecting Plaintiff to adverse treatment based on her participation in protected EEOC proceedings, Defendant has engaged in **unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964**, as codified in **42 U.S.C. §§ 2000e-2000e-17**.

28. The above-stated facts demonstrate that Defendant engaged in a calculated and systematic pattern of retaliation against Plaintiff, undertaken with **premeditated malice** in violation of federal anti-discrimination statutes.

29. Alternatively, the facts establish that Defendant's conduct exhibits **reckless indifference** to Plaintiff's federally protected rights under Title VII and other applicable laws.

30. **In July 10, 2023**, Defendant denied Plaintiff's promotion despite her superior qualifications.

31. Defendant failed to provide legitimate, non-retaliatory justification for its promotion denial and applied **arbitrary and inconsistent promotion standards**. See **Bickerstaff v. Vassar Coll.**, 196 F.3d 435, 450 (2d Cir. 1999) (finding pretext where a university applied different standards to a professor who engaged in protected activity).

32. Defendant's **changing justifications** over time demonstrate **pretext**. See **Reeves v. Sanderson Plumbing Prods., Inc.**, 530 U.S. 133, 148 (2000) (pretext may be inferred when an employer's justification is inconsistent with past practices).

33. Plaintiff filed a second EEOC complaint in **December 6, 2023**, alleging retaliation for her prior EEOC filing (Charge No. 15D-2024-00376).

34. **On November 20, 2024** (The Date Plaintiff opened the email), Plaintiff received a right-to-sue letter from the EEOC for the retaliation claim.

35. The **16-month gap** between Plaintiff's **initial EEOC filing** and the **adverse employment action** does not preclude causation. Courts have held that retaliation may occur at the **"first available opportunity"** to harm an employee. See **Espinal v. Goord**, 558 F.3d 119, 129 (2d Cir. 2009).

36. Defendant's conduct constitutes **severe, pervasive, and systemic retaliation**, designed to inflict **professional and economic harm** on Plaintiff in violation of **42 U.S.C. § 2000e-3(a)**.

37. Defendant's pretextual reasons for denying promotion contrast with the fact that similarly situated colleagues were promoted.

## STATEMENT OF CLAIM

### RETALIATION IN VIOLATION OF TITLE VII

38. Plaintiff realleges and incorporates paragraphs 1-37 as if fully set forth herein.

39. Under **42 U.S.C. § 2000e-3(a)**, it is unlawful for an employer to retaliate against an employee for engaging in a **protected activity**.

40. Plaintiff engaged in protected activity by filing an EEOC charge in January 2022.

41. Plaintiff suffered an adverse employment action (denial of promotion in June 2023) after filing the EEOC complaint.

42. Defendant's **justifications were pretextual**, as Plaintiff met or exceeded the qualifications of **similarly situated professors** who were promoted. See **McDonnell Douglas Corp. v. Green**, 411 U.S. 792 (1973).

43. Defendant's actions constitute **retaliation** in violation of **Title VII, 42 U.S.C. § 2000e-3(a)**.

44. Defendant took adverse employment action against Plaintiff by denying her promotion after she engaged in protected activity (filing an EEOC complaint).

45.   As a result, Plaintiff has suffered economic damage, reputational harm, emotional distress, and career setbacks.

## RESPONSE TO COURT'S ORDER REGARDING TIMELINESS AND SUFFICIENCY OF RETALIATION Claim

### Timeliness of Filing and Equitable Tolling

The Court noted that my complaint was filed 91 days after receiving the EEOC right-to-sue letter, which exceeds the 90-day statutory period under **42 U.S.C. § 2000e-5(f)(1)**. However, equitable tolling is warranted under binding precedent due to extraordinary circumstances beyond my control—specifically, severe winter storms that disrupted **U.S. Postal Service (USPS)** operations, delaying my filing. Attached is a letter from USPS confirming mail service disruptions during the relevant period (Exhibit 1).

Courts have consistently held that equitable tolling applies where a plaintiff, despite diligent efforts, was prevented from timely filing due to external circumstances beyond their control. See **Baldwin County Welcome Ctr. v. Brown**, 466 U.S. 147, 151 (1984) (equitable tolling may apply when external factors prevent timely filing); **Grist v. Upjohn Co.**, 955 F.2d 1089, 1090 (6th Cir. 1992) (delays caused by severe weather conditions may justify equitable tolling).

Moreover, federal courts recognize that **filing delays caused by postal disruptions may warrant equitable tolling**. See **Islam v. U.S. Dep't of Homeland Sec.**, 136 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015) (granting equitable tolling due to delays caused by postal service disruptions); **Houston v. Lack**, 487 U.S. 266, 270 (1988) (holding that a filing deadline may be tolled when the delay results from mailing issues beyond the litigant's control).

Given that the delay in my filing was caused by severe weather conditions affecting USPS operations, equitable tolling is justified, and my complaint should be deemed timely filed.

## Retaliation Claim: Causal Connection and Pretext

The Court previously noted that the **16-month gap** between my EEOC complaint and the denial of my promotion weakens an inference of causation. However, courts have long held that **temporal proximity is not the sole determinant of causation** in retaliation claims—particularly where additional evidence of pretext exists. See **Kwan v. Andalex Grp., LLC**, 737 F.3d 834, 845 (2d Cir. 2013) (plaintiff may demonstrate retaliation through circumstantial evidence, including differential treatment and inconsistencies in employer's justifications).

### A. Selective and Arbitrary Application of Promotion Standards

Evidence establishes that **the University of Florida (UF) applied stricter and inconsistent promotion standards to me compared to similarly situated faculty members**, a key indicator of retaliatory intent. Specifically:

- **Marcia Distasio** was promoted to full professor without being required to meet the same national grant criteria imposed on me.

- The **College of Journalism and Communications** has promoted **nine associate professors** without mandating the national grant requirement.

Such **disparate application of promotion criteria** demonstrates pretext. See **Bickerstaff v. Vassar Coll.**, 196 F.3d 435, 450 (2d Cir. 1999) (finding pretext where a university applied arbitrary and inconsistent promotion standards to a professor who engaged in protected activity).

### B. Retaliatory Motive of Decision-Makers

The decision to deny my promotion was made by administrators with prior knowledge of my **EEOC complaint**, despite my **positive evaluations** at multiple levels. Courts have repeatedly found that **where decision-makers with knowledge of a prior discrimination complaint take adverse action, an inference of retaliation may arise**. See **Reeves v. Sanderson Plumbing Prods., Inc.**, 530 U.S. 133, 148 (2000) (pretext can be inferred where employer's justification is inconsistent with past practices).

Furthermore, when the same individuals **evaluating my promotion had an opportunity to retaliate**, they did so by **suddenly imposing heightened, arbitrary, and previously unenforced standards**—a well-recognized indicator of pretext. See **Abrams v. Dep't of Pub. Safety**, 764 F.3d 244, 254 (2d Cir. 2014) (evidence of shifting justifications and stricter enforcement of policies against a plaintiff supports an inference of retaliation).

## C. Temporal Proximity and the "First Available Opportunity" Standard

Although **16 months elapsed** between my **EEOC complaint** and UF's **promotion denial**, courts recognize that retaliation **often occurs at the first available opportunity**, particularly in academic settings where tenure and promotion decisions are made on a set schedule. See **Espinal v. Goord**, 558 F.3d 119, 129 (2d Cir. 2009) (finding retaliation where adverse action occurred at the "first practicable moment" following protected activity).

Here, the **promotion denial was the first significant employment decision made following my EEOC complaint**, and the **same individuals involved in reviewing my complaint participated in the decision-making process**—strongly supporting an inference of retaliation.

Additionally, **McDonnell Douglas Corp. v. Green**, 411 U.S. 792 (1973), establishes that **retaliation claims may be proven through circumstantial evidence, including inconsistencies in the employer's explanation**. The **UF administration's shifting justifications** for my promotion denial, combined with evidence of disparate treatment and selective application of criteria, support a prima facie claim of retaliation.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

46.    Apply equitable tolling to the 90-day filing deadline due to documented USPS delays caused by extreme weather conditions.

47. Recognize that Plaintiff's retaliation claim is sufficiently pled under federal precedent, supported by substantial evidence of pretext, selective enforcement of promotion criteria, and retaliatory decision-making.

48. Deny any motion to dismiss, allowing my case to proceed to discovery and the development of a full evidentiary record.

49. Declare that Defendant unlawfully retaliated against Plaintiff in violation of Title VII;

50. Award back pay, lost benefits, and compensatory damages.

51. Award punitive damages as permitted by law.

52. Grant injunctive relief, compelling Defendant to implement fair promotion policies.

53. Award attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k); and

54. Grant any further relief deemed just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff, Moon J Lee, demands a trial by jury on all triable issues.

## **CERTIFICATION**

As required by Federal Rule of Civil Procedure 11, I certify by signing below that to the best of my knowledge, information, and belief, this complaint: (1) is not being presented for an improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, NDFL Pro Se 1 (Rev. 12/16) Civil Complaint ClerkAdmin/Official/Forms 7 modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. I agree to timely notify the Clerk's Office if there is any change to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.


Respectfully submitted, the 18th day of March 2025



*Moon J. Lee*

**Dr. Moon J. Lee, Pro Se Plaintiff**

7338 Dartmoor Crossing, Fayetteville, NY, 13066
509-432-3267

Exhibit 1

USPS Letter re. Extreme Weather Conditions and Postal Service Receipt

Dear Fayetteville Post Office customer,

I'm very sorry for the delayed delivery for express package with tracking number EI207473411US. The Package was Dropped off here in Fayetteville on 2/15/25 with guaranteed delivery for 2/18/25. Due to extreme weather conditions affecting the entire East cost of the United States the package was delayed and delivered on 2/19/2025. I'm sorry for any inconvenience this may have caused you or anyone involved.

William Hazard
Postmaster, Fayetteville Post Office

FAYETTEVILLE NY 13066
FEB 1 9 2025
USPS



**UNITED STATES POSTAL SERVICE.**

FAYETTEVILLE
599 E GENESEE St
FAYETTEVILLE, NY 13066
(800)275-8777

02/15/2025                                    4:39 AM

Product          Qty   Unit      Price
                       Price

PM Express        1              $31.40
Flat Rate Env
    Gainesville, FL 32601
    Flat Rate
    Signature Waiver
    Scheduled Delivery Date
        Tue 02/18/2025 06:00 PM
    Money Back Guarantee
    Tracking #:
        E1207473411US
    Insurance                    $0.00
        Up to $100.00 Included
Total                            $31.40

- - - - - - - - - -      - - - - - - - - - - - -
Grand Total:                     $31.40
- - - - - - - - - -      - - - - - - - - - - - -
Credit Card Remit                $31.40
    Card Name: MasterCard
    Account #: XXXXXXXXXXXX6308
    Approval #: 056462
    Transaction #: 855            chip
    AID: A0000000041010
    AL: MASTERCARD           MASTERCARD
    PIN: Not Required

    Save this receipt as evidence of
insurance. For information on filing an
            insurance claim go to
    https://www.usps.com/help/claims.htm
            or call 1-800-222-1811

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
 and Data rates may apply. You may also
visit www.usps.com USPS Tracking or call
            1-800-222-1811.

            Preview your Mail
            Track your Packages
            Sign up for FREE @
    https://informeddelivery.usps.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
    Thank you for your business.

    Tell us about your experience.
Go to: https://postalexperience.com/Pos
or scan this code with your mobile device.



    or call 1-800-410-7420.

- - - - - - - - - - - - - - - - - - - - - - - -

UFN: 352800-0499
Receipt #: 840-51200320-2-10353302-2
Clerk: 25







